Argued and submitted November 14, 1994, affirmed February 1, petition for review denied April 25, 1995 (321 Or 94)

John MARK
and Jean Mark,
*Appellants,*

*v.*

Oren HUTCHINSON
and Oren Hutchison, dba Arco AM/PM Market,
*Respondents.*

(91-3580-L-3; CA A82859)

889 P2d 361

Thomas C. Howser argued the cause for appellants. On the briefs were Judith H. Uherbelau and Howser & Munsell.

Benjamin M. Bloom argued the cause for respondents. With him on the brief was Cowling, Heysell, Plouse, Ingalls & Moore.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

Plaintiffs John and Jean Mark appeal from an adverse judgment in a "slip and fall" personal injury action. They assert that the trial court erred in excluding testimony from an expert witness, striking certain allegations of negligence for failure of proof, and giving an improper jury instruction. We affirm.

Defendant Hutchinson owns and operates a service station and related convenience store near Ashland. In November 1988, the Marks were returning to California after spending the Thanksgiving holiday in Oregon with one of their children. Anticipating snow in the Siskiyou Mountains, they stopped at defendant's service station to purchase gas and tire chains. After filling the car with gas, John Mark walked from the pump area toward the convenience store where customers paid for their gas. As he stepped up from the pump area onto the walkway in front of the store, Mark slipped and fell, breaking his right hip. When Mark fell, his arm came into contact with a "black and oily" substance, which adhered and later could be removed only with alcohol. As Mark lay on the ground, he could see blue-green rings on a puddle of water next to his face.

Plaintiffs sued, asserting claims for negligence and loss of consortium. The gravamen of those claims was that defendant knew, or reasonably should have known, of the unsafe conditions on his premises but failed to either warn of, or correct, those conditions. The jury returned a verdict for defendant.

■ Plaintiffs first assign error to the trial court's limitation of testimony by their expert witness, Zbinden. Zbinden, an engineer, testified that the walkway Mark had stepped onto had a lower "coefficient of friction" — was slicker — than the concrete area around the gas pumps from which he stepped. He also testified that people do not anticipate walking from a surface on which they have traction to one on which they do not, and that defendant could easily have applied substances to the walkway that would have made it less slick. The following then transpired:

"[BY PLAINTIFFS' COUNSEL]: Based upon these tests and your observations, do you believe that the premises

located there, assuming that this was a wet, stormy day — and I'm going to ask you to make a couple of other assumptions, too, that there was either some kind of slippery or oily — I think the word may be slimy material in front of the door, the existence of the premises as they are now — can you express an opinion as to whether those premises constituted an unusually or unreasonably dangerous condition under all of those circumstances?

"[DEFENSE COUNSEL]:  Your Honor, I do object. I think that goes beyond the area of appropriate expert testimony in this case, because that kind of opinion simply can't be helpful to the jury. He has given us the parameters and the jury can draw its own conclusions.

"THE COURT:  Doesn't this question assume the very thing this jury is saying, you know, what was there on that day at the instant this gentleman slipped, and this witness wasn't there and admits he wasn't there?

"[PLAINTIFFS' COUNSEL]:  Of course he wasn't, except that I don't think that all of us have the expertise that this witness does in comparison of surfaces and the relative co-efficients of friction, and I have not understood that an expert addressing an opinion upon the ultimate issue is prohibited.

"THE COURT:  That's not the objection, as I see it. The objection is sustained."

Thereafter, plaintiffs' counsel made the following offer of proof:

"Q.  I had asked you a question, Mr. Zbinden, which you may or may not remember about whether the totality of the conditions including the inclement weather, water being tracked in, the possibility of perhaps some snow or slush, the existence of possibly oil or gas or a slippery substance in the area in front of the door, whether in your opinion the combination of the physical properties and those other elemental properties would have on this day in question created an unreasonable risk of danger to Mr. Mark or someone in his position.

"A.  Well, if a surface becomes slippery through some material being placed on it, and the human is unaware of that material or is walking in an area where that material doesn't exist and suddenly steps where that material does exist, yes, that's a big change in the physical way things are going to happen. To me, it would be no different than black ice,

everything is just fine, you go around the corner and the existence of black ice that you can't see. The human can make a lot of very quick decisions about stuff not looking right, don't step there, or it looks like everything else, but this particular place had a smaller co-efficient of friction, and the expectation that the human would expect some resistance and it wasn't there, the existence of a fall is possible."

Plaintiffs contend that the trial court's exclusion of Zbinden's testimony was improper under OEC 704.[1] We need not decide that question, because we conclude that, in all events, the alleged error was harmless.

We so conclude for two reasons. First, even if counsel's question were permissible under OEC 704, Zbinden's putative response, as ultimately preserved in the offer of proof, did not answer that question. Nowhere in the offer of proof did Zbinden express an opinion as to whether, given the totality of the circumstances, defendant's premises were unreasonably dangerous. Second, in a related sense, the answer that Zbinden *did* give, describing conditions on the premises, reiterated his own previously admitted testimony. Thus, the exclusion of that response could not have affected the outcome of the trial. *See Powers v. Officer Cheeley*, 307 Or 585, 597, 771 P2d 622 (1989); OEC 103(1).

■■    Plaintiffs next contend that the court erred by striking all references to oil on the surface of the gas station from their allegations of negligence. When reviewing the striking of allegations of negligence, "[w]e apply standards of review relevant to a motion for directed verdict." *Barnes v. Walsh*, 130 Or App 533, 535-36, 883 P2d 234 (1994). A directed verdict is warranted only where, "from the facts taken in the light most favorable to [the non-moving party], reasonable persons could draw one inference and that inference being [favorable to the moving party]." *Hall v. State*, 43 Or App 325, 328, 602 P2d 1104 (1979), *aff'd* 290 Or 19, 619 P2d 256 (1980). Consequently, we consider whether, from the totality of the evidence, a reasonable juror could have concluded that

---

[1] OEC 704 provides:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

defendant was negligent with respect to the existence of oil on his premises.

■■ To recover for personal injuries, an invitee who slips and falls on a foreign substance on a business property must show:

> "(1) that the substance was placed there by the occupant, *or* (2) that the occupant knew that the substance was there and failed to use reasonable diligence to remove it, *or* (3) that the foreign substance had been there for so long that the occupant should, in the exercise of reasonable diligence, have discovered and removed it." *Griffin v. K.E. McKay's Market of Coos Bay, Inc.*, 125 Or App 448, 451, 865 P2d 1320 (1993), *rev den* 319 Or 80 (1994). (Emphasis in original.)

Plaintiffs argue that they presented evidence showing that defendant either knew of the oil or that it had been there for so long that defendant should have discovered and removed it.[2] Plaintiffs point particularly to: (1) Mark's testimony about the blue-green rings on a puddle where he fell; (2) Mark's testimony that, when he fell, his arm became stained with an oily substance that could not be removed with soap and water, but only with alcohol; (3) Jean Mark's testimony that there was oil on the ground in the area where her husband fell; and (4) defendant's admission that it was possible that customers' cars could leak oil on the premises and that he and his employees had used kitty litter to clean up past oil spills.

Plaintiffs presented no direct testimony that defendant or his employees actually knew of the alleged foreign substance. Nor did plaintiffs' evidence support a reasonable inference of actual knowledge. Thus, the inquiry reduces to whether the evidence supported a reasonable inference that oil had been present for so long that defendant, in the exercise of reasonable diligence, should have discovered and removed it. We conclude that the evidence did not.

The blue-green rings in the nearby puddle and the fact that the oily substance on Mark's arm could be removed

---

[2] At oral argument in this court, plaintiffs argued that, because oil is not a foreign substance in a gas station, the less rigorous standards for ordinary premises liability should apply. Because plaintiffs never made this argument to the trial court or in their opening brief on appeal, we do not address it.

only with alcohol do not establish how long those substances had been present. In particular, plaintiffs adduced no evidence pertaining to the time it takes for oil to form rings in water or to how the adhesive properties of certain "black and oily substances" vary with time under the conditions present on defendant's premises at the time of the accident. Similarly, although Jean Mark testified that there was oil near where her husband fell, that testimony went merely to the presence, and not the duration of the presence of the foreign substance. Finally, defendant's admission that there had been oil spills on his premises previously did not, without more, support a reasonable inference that *this* substance had been present for so long that defendant should have discovered and removed it. Thus, the trial court did not err in striking the references to oil from plaintiffs' allegations of negligence.

■      Finally, plaintiffs contend that the trial court erred when it omitted the terms "refuse and gas" from its summary of issues in instructing the jury. Because plaintiffs failed to specifically except to the instruction, the error, if any, is not preserved for our review. *See* ORCP 59H; *see also Garrett v. Olsen*, 71 Or App 93, 95-96, 691 P2d 123 (1984).

Affirmed.