2012 OK CIV APP 62

**Tanya BROWN, Plaintiff/Appellant,**

v.

**Kenneth BEETS and Misty Beets, individually, and d/b/a Bar B Farm, Defendants/Appellees.**

No. 110,173.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 6, 2012.

Steven R. Hickman, Frasier, Frasier & Hickman, LLP, Tulsa, Oklahoma, for Plaintiff/Appellant.

A. Mark Smiling, Stephan A. Wangsgard, Tulsa, Oklahoma, for Defendants/Appellees.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Appellant/Plaintiff Tanya Brown (Brown) sued Appellees/Defendants Kenneth Beets and Misty Beets, individually, and doing business as Bar B Farm (the Beets), for negligence after Brown was kicked by a horse on a trail ride led by Misty Beets. The trial court granted summary judgment in favor of the Beets. Brown appeals. After *de novo* review, we hold that there are material facts in dispute as to whether the Beets are exempt from liability under the Release signed by Brown and the Oklahoma Livestock Activities Liability Limitation Act, and the Beets are not entitled to judgment as a matter of law. We reverse and remand.

¶ 2 Misty Beets occasionally led horseback trail rides at Bar B Farms, property owned by her and her husband, Kenneth Beets. Brown hired Misty Beets to lead a group trail ride for her daughter's birthday on

April 9, 2010. There were approximately ten (10) people in the group. Brown signed the "Bar 'B' Farms Release from Liability" (the Release) one day before the trail ride. The Beets provided the horses to Brown's group. Rosie Ferrell (Ferrell), an eleven-year-old girl, was riding a horse named Honey, and Brown was riding a horse named Quincy. Ferrell and Honey trotted up beside Brown and Quincy, and Honey kicked backward, striking Brown and breaking her leg.

¶ 3 Brown filed her petition alleging negligence September 14, 2010. The Beets filed a motion for summary judgment August 11, 2011. The Beets asserted that they were entitled to judgment as a matter of law because (1) Brown waived her right to sue by signing the Release, and (2) Brown's claim was barred by the Oklahoma Livestock Activities Liability Limitation Act. The trial court granted summary judgment in favor of the Beets, and Brown appeals.

¶ 4 We review the trial court's grant of summary judgment *de novo. Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. We, like the trial court, will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Id.*

¶ 5 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2011, Ch. 2, App. 1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group,* 1999 OK 7, ¶ 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Nat'l Mortgage Ass'n,* 1999 OK 73, ¶ 6, 988 P.2d 1275, 1278. Where, as here, the defendants move for summary judgment on the basis of an affirmative defense, they must show that there is no substantial controversy as to the facts that are material to the affirmative defense, and that the facts and inferences that may be reasonably drawn from them are in their favor. *Daugherty v. Farmers Coop. Ass'n,* 1984 OK 72, ¶ 5, 689 P.2d 947, 949.

¶ 6 There are two issues on appeal. First, whether the Release prevents Brown from suing the Beets for negligence. Second, whether the Beets are exempt from liability based on the Livestock Activities Liability Limitation Act.

## THE RELEASE

¶ 7 In their motion for summary judgment, the Beets argue that the Release signed by Brown extended the waiver of liability pursuant to the Livestock Activities Liability Limitation Act.[1] *See* 76 O.S.Supp.

---

1. "Two or more persons may agree, in writing, to extend the waiver of liability pursuant to the provisions of the Oklahoma Livestock Activities Liability Limitation Act. Such waiver shall be valid and binding by its terms." 76 O.S. § 50.4.

The relevant provisions of the "Bar 'B' Farms Release from Liability" stated:

1. Client understands there are risks in and around equine activities and Bar "B" Farms and that Bar "B" Farms is not liable for any injury to, or the death of a client resulting from the inherent risk of equine activities and facilities.

\*     \*     \*

3. Client agrees to assume any and all risks involved in or arising from their use of or presence upon Bar "B" Farms property and facility including, without limitations but not limited to the risks of death, bodily injury, property damage, falls, kicks, bites, collisions with vehicles, horses or stationary objects; fire or explosion, the unavailability of emergency medical care, and/or negligence and/or deliberate act of another person.

4. Client agrees to hold Bar "B" Farms and all successors, assigns, subsidiaries, franchisees, affiliated officers, directors, employees and agents completely harmless and not liable and release them from all liability whatsoever and **AGREES NOT TO SUE** them on account of or in connection with any claims, or presence upon Bar "B" Farms property and facilities, including without limitation, those based on death, bodily injury, property damage, including consequential damages, except if the damages are caused by direct, willful and wanton gross negligence of Bar "B" Farms.

5. Client agrees to waive the protection afforded by any statute of law in any jurisdiction whose purpose, substance, and/or effect is to provide that a general release shall not extend to claims, material or otherwise, which the person giving the release does not

2002 § 50.4. The Beets note that according to the Release, the only circumstances under which Brown could recover were if the Beets committed an act with willful or wanton disregard for the safety of the riders, and that act caused Brown's injury, or the Beets failed to make a reasonable effort to determine the abilities of the riders to manage the horses provided based on their representations. The Beets assert that because they did not commit gross negligence and they made more than a reasonable effort to ascertain the abilities of the riders, they are entitled to judgment as a matter of law based on the Release.

¶ 8 In her response to the Beets' motion for summary judgment, Brown provided evidence that Misty Beets failed to make a reasonable effort to determine the ability of Ferrell to manage the horse Honey based on her representations of her ability.[2] Brown attached affidavits from the trail ride participants, including Ferrell, which stated that Misty Beets asked the kids who had the most experience riding. Ferrell represented that she had the most experience. Misty Beets paired Ferrell with Honey. According to the affidavits, Misty Beets told Ferrell that Honey was just broken and had bucked her off. Misty Beets testified that was all she did to determine the participants' abilities and she put the children on the older, more laid back horses.[3] Brown also attached an affidavit from Jim Baldwin, DVM, in which he stated that the standards of trail riding were not met because Misty Beets failed to determine the participants' abilities to manage the horses provided.

> know or suspect to exist at the time of executing the release.

2. Brown also argues that the Beets are not entitled to judgment as a matter of law because the Release was procured by fraud, the Release was not binding because it was not signed by a representative of Bar B Farm, and the Beets committed gross negligence. Because we hold that there is a dispute of material fact as to whether Misty Beets made a reasonable effort to determine the ability of the riders, we will not address Brown's alternative arguments.

3. Brown also provided her deposition testimony that when she went to Bar B Farm to sign the consent form the day before the trail ride, Misty

¶ 9 The Beets concede that if Misty did not make a reasonable effort to determine the ability of the riders to manage the horses based upon the riders' representations, Brown may recover under the Release. We hold that there is a dispute of material fact as to whether Misty Beets made a reasonable effort to determine the ability of Ferrell to manage the horse provided based upon her representations. Therefore, the Beets are not entitled to judgment as a matter of law based on the Release.

## LIVESTOCK ACTIVITIES LIABILITY LIMITATION ACT

¶ 10 The Beets assert that even if they are not released from liability based on the Release, they are exempt from liability and entitled to judgment as a matter of law because Brown's injury comes within the scope of the Oklahoma Livestock Activities Liability Limitation Act. *See* 76 O.S.Supp. 2009 § 50.1–50.4. According to the Livestock Activities Liability Limitation Act, "a livestock activity sponsor, a participant or a livestock professional acting in good faith and pursuant to the standards of the livestock industry shall not be liable for injuries to any person engaged in livestock activities when such injuries result from the inherent risks of livestock activities." 76 O.S. § 50.3(A). Equine are livestock, 76 O.S. § 50.2(3), and riding horses is considered "engaging in a livestock activity." 76 O.S. § 50.2(1), (4)(e). A "livestock activity sponsor" includes an individual who organizes or provides the facilities for riding horses. 76 O.S. § 50.2(5). A "livestock professional" means a person

Beets asked her about the ability of the riders, and she told Misty Beets they were all amateurs, except for Ferrell, who had taken riding lessons. There was also deposition testimony from Misty Beets that Brown told her that she had been around horses and one child rode on a regular basis. These statements regarding Ferrell's previous experience riding and ability to manage horses were representations made by Brown and were not representations made by Ferrell as to her own ability. The statute requires that a livestock activity sponsor or professional "make a reasonable effort to determine the ability of the participant to manage the particular livestock *based upon the participant's representations of such participant's ability.*" 76 O.S.Supp.2002 § 50.3(B)(2)(d) (emphasis added).

engaged for compensation in renting a horse to someone for the purpose of engaging in a livestock activity, such as riding, or renting equipment or tack. 76 O.S. § 50.2(6). "Inherent risks of livestock activities" mean those dangers or conditions which are an integral part of livestock activities, including but not limited to the propensity of livestock to behave in ways that may result in injury to persons on or around them and the unpredictability of livestock's reaction to such things as sounds, sudden movement and unfamiliar objects, persons or other animals. 76 O.S. § 50.2(7).

¶ 11 However, the Act *does not* prevent or limit the liability of a livestock activity sponsor or professional if the sponsor or professional:

a.   commits an act or omission that constitutes willful or wanton disregard for the safety of any person engaged in livestock activities, and that act or omission caused the injury,

. . .

c.   provided the equipment or tack, which was faulty, and such equipment or tack was faulty to the extent that it did cause the injury,

. . .

d.   provided the livestock and failed to make a reasonable effort to determine the ability of the participant to manage the particular livestock based upon the participant's representations of such participant's ability,

. . .

76 O.S. § 50.3(B)(2).

¶ 12 The Beets argue that Misty was a livestock activity sponsor or professional acting in good faith and pursuant to industry standards, that a horse kicking backward is an inherent risk on a trail ride, and Brown's injury resulted from that inherent risk.

¶ 13 In her response, Brown argued that the livestock activity sponsor or professional is only exempt from liability under the Act if the sponsor or professional is acting in good

faith and pursuant to industry standards, and the Beets were not. Brown attached to her response an affidavit from Dr. Baldwin. Dr. Baldwin opined:

9.   That based upon my review of [the deposition testimony of Kenneth Beets, Misty Beets and Tanya Brown] I am of the opinion that the standards of trail riding were not met by:

a.   Failing to instruct the participants properly and determine their ability to manage the horses that were provided.

b.   Failing to make a reasonable effort to provide horses that were suitable for novice riders.

c.   Failing to provide the proper equipment or tack to properly control the horse "Honey" that kicked the Plaintiff Tanya Brown.

d.   Having a stallion in close proximity to several mares in this trail riding activity created a dangerous condition.

e.   The presence of a stallion in close proximity with mares will cause the mares to become agitated and highly unpredictable which is a fact that was known or should have been known by the Defendant Misty Beets.

If Misty Beets was not acting according to industry standards, she is not exempt from liability under the Act. We hold that there is a dispute of material fact as to whether Misty Beets acted pursuant to industry standards, and the Beets are not entitled to judgment as a matter of law.

¶ 14 Brown also asserts that Misty Beets committed several acts described in § 50.3(B)(2) and, therefore, the Beets were not exempt from liability. Brown argued, *inter alia*, that Misty Beets provided the horse Honey to Ferrell and failed to make a reasonable effort to determine the ability of Ferrell to manage Honey based upon her representations of her ability.[4]   *See* 75 O.S.

4.   Brown argued that Misty Beets acted with willful and wanton disregard for the riders, that act caused her injury, *see* 76 O.S. § 50.3(B)(2)(a), that Misty Beets provided the stirrups to Ferrell,

the stirrups did not fit properly, Ferrell could not control Honey due to the faulty stirrups, and the faulty stirrups caused Brown's injury, *see* 76 O.S. § 50.3(B)(2)(c).

§ 50.3(B)(2)(d). As previously discussed, Brown has produced evidence that Misty Beets did not make a reasonable effort to determine the ability of Ferrell to manage Honey based upon Ferrell's representations of her ability. If Misty Beets failed to make a reasonable effort to determine the ability of Ferrell to manage Honey, the Beets are not exempt from liability under the Act. We hold that there is a dispute of material fact as to whether Misty Beets made a reasonable effort to determine the ability of Ferrell to manage Honey based upon her representations. Therefore, the Beets are not entitled to judgment as a matter of law based on the Act.

¶ 15 There are genuine issues of fact material to determining whether Brown waived her right to sue by signing the Release and whether the Beets are exempt from liability based on the Oklahoma Livestock Activities Liability Limitation Act. Therefore, the Beets are not entitled to judgment as a matter of law, and we reverse and remand for further proceedings.

¶ 16 REVERSED AND REMANDED.

JOPLIN, V.C.J., and MITCHELL, J. (sitting by designation), concur.